Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Tara A. Currie (SBN 323984)
tcurrie@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Goyard St-Honore*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOYARD ST-HONORE, a French Corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>S2, INC., a Delaware Corporation; SURGEON WORLDWIDE INC., a Delaware Corporation; DOMINIC CHAMBRONE aka DOMINIC CIAMBRONE, an individual; and DOES 1-10, inclusive,<br><br>              Defendant. | CASE NO.: 2:24-cv-04903<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**1. TRADEMARK INFRINGEMENT**<br><br>**2. FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTIONS**<br><br>**3. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE, § 17200, et seq.**<br><br>**4. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Goyard St-Honore ("Goyard" or "Plaintiff") for its claims against defendants S2, Inc.; Surgeon Worldwide Inc.; and Dominic Chambrone aka Dominic Ciambrone; and DOES 1-10 (collectively, "Defendants") alleges as follows:

## JURISDICTION AND VENUE

      1.      Plaintiff files this action against Defendants for trademark infringement and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and related claims of trademark infringement and

unfair competition under the statutory and common law of the State of California.

2.     This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants reside and maintain a principal place of business in the State of California and conduct continuous and systematic business in this State. Defendants also placed the Accused Products (as defined below) in the stream of commerce directed to residents of the State of California, thereby deriving commercial benefits from the sale of Accused Products there and caused injury to Plaintiff within the State of California.

4.     Venue is proper under 28 U.S.C. §§ 1391 (b)-(c) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district and Defendants reside in this District.

## THE PARTIES

5.     Goyard is a foreign business entity organized under the laws of the Republic of France with its principal place of business located at 16 place Vendôme in Paris, France 75001.

6.     Upon information and belief, S2, Inc. ("S2") is a Delaware Corporation, with a principal place of business located at 119 W 36th Place, 106, Los Angeles, CA 90007.

7.     Upon information and belief, Surgeon Worldwide Inc. ("Surgeon Worldwide") is a Delaware Corporation that is registered to do business in the State of California, with a principal place of business located at 17595 Harvard Avenue C552, Irvine, CA 92614, and another office located at 3855 S Hill Street, Los Angeles, CA 90037.

8.      Upon information and belief, Dominic Chambrone aka Dominic Ciambrone ("Mr. Chambrone") is the owner, officer, director, operator, and controlling force of S2 and/or Surgeon Worldwide, and resides in Los Angeles, California.

9.      Upon information and belief, S2, Surgeon Worldwide, and/or Mr. Chambrone do business as "The Shoe Surgeon" in the State of California as well as nationwide through their online website, www.thesurgeon.com.

10.     Upon information and belief, Defendants also operate their business at 4000 Broadway Place, Los Angeles, CA 90037.

11.     Goyard is unaware of the names and true capacities of Defendants, whether individuals, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names.  Goyard will seek leave to amend this complaint when their true names and capacities are ascertained.  Upon information and belief, each one of Defendants caused or are in some manner responsible for causing the wrongful acts alleged herein, and that at all relevant times each one was the agent, servant, and/or employee of the other Defendants acting within the course and scope of said agency, service, and employment.

12.     Upon information and belief, at all relevant times herein, each one of Defendants knew or reasonably should have known of the wrongful acts and behavior alleged herein and the damages caused thereby, ratified, and encouraged such acts and behavior, and/or had a non-delegable duty to prevent such acts and behavior but failed or refused to do so.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.     The Goyard Brand and Trademarks

13.     Goyard is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Goyard Marks"):

| Goyard's Mark | U.S. Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
|  | 4,036,898 | 10/11/11 | 025: Clothing for men, women and children, namely, dresses, skirts, petticoats, culottes, ladies' suits, trousers, shorts, Bermuda shorts, swimming drawers, shirts, ladies' shirts, blouses, tee-shirts, sweatshirts, waistcoats, jackets, cardigans, pullovers, sweaters, parkas, anoraks, coats, gaberdines, raincoats, furs, sashes for wear, shawls, scarf, gloves, neckties, belts, socks, stockings, tights, underwear, pajamas, dressing gowns, swimsuits, bathrobes; footwear, except orthopedic footwear, namely, shoes, sandals, boots, half-boots, boot liners, slippers; hats, berets, caps. |
|  | 5,753,841 | 5/21/19 | 025: Clothing, namely, suspenders, belts, neckties, socks, shawls, sashes for wear, scarves, gloves, bathing suits, bath robes, pocket squares; clothing, namely, footwear, sandals, boots, slippers; headwear, namely, hats, berets, caps |

| Goyard's Mark | U.S. Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
|  | 3,418,288 | 4/29/08 | 018: Bags and traveling sets, namely, traveling bags; garment bags for travel; luggage trunks; valises, vanity cases sold empty, rucksacks, handbags, beach bags, school bags; suitcases, briefcases, pocket wallets, purses, not of precious metal, leather key cases; business card cases; umbrellas, parasols, walking sticks |
|  | 5,532,309 | 8/7/18 | 025: Clothing, namely, suspenders, belts being clothing, neckties, socks, shawls, sashes for wear, scarves, gloves, bathing suits, bath robes, pocket squares being clothing; footwear, namely, sandals, boots, slippers; headgear, namely, hats, berets, caps being headwear. |

| Goyard's Mark | U.S. Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
| **GOYARD** | 1,821,224 | 2/15/94 | 016: Office requisites; namely, agendas and spare sheets therefor, repertories, desk pads, pen holders, stamp boxes for the storage of postage stamps, writing pads, address pads, pencil jars for desk use, blotters, ink wells, paper cutters, mail trays for desk use, note books, check cases and pen cases<br><br>018: Articles of fancy leather, leather, cloth and skin articles; namely, valises, travel trunks, cosmetic cases sold empty, traveling bags, handbags, briefcases, attache cases, briefcase type document cases, toilet cases sold empty, makeup cases sold empty, wallets, hat boxes for travel, business card cases, key cases, draw string pouches, garment bags for travel, necktie cases, umbrellas, saddlebags, saddle covers, and articles for dogs; namely, dog collars, dog leashes, dog clothes and carrying bags. |

14.    Attached hereto as **Exhibits A-E** are true and correct copies of the trademark registrations identified in paragraph 13 of this Complaint, which are incorporated herein by reference.  Such registrations are valid, subsisting, in full force and effect, and incontestable, thus serving as conclusive evidence of the validity of the Marks and as conclusive evidence of Plaintiff's exclusive right to use the Marks in connection with the identified products under Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065, 1115(b).

15.     Goyard is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this District, a variety of luxury and high quality luxury goods under multiple world famous common law and federally registered trademarks, including those identified in Paragraph 13. Goyard's products are immediately recognized by the use of the Goyard Marks, which are incorporated into its iconic Goyardine Canvas.

16.     Goyard has used the Goyard Marks for more than a century, including use for decades in United States commerce, and long before Defendants' use of copies of the Marks.  Today, the Goyard Marks are reproduced on millions of dollars' worth of consumer goods spanning the full range of Goyard's product line, such as handbags, wallets, luggage, and other leather goods.  Products bearing the Goyard Marks are sold in Goyard boutiques throughout the world, including within this District, as well as through authorized resellers on the Internet.  Accordingly, the Goyard Marks have been used to identify and distinguish Goyard's high quality goods for an extended period of time.

17.     The Goyard Marks are symbols of Goyard's quality, reputation and goodwill and have never been abandoned. Goyard has carefully monitored and policed the use of the Goyard Marks.

18.     Further, Goyard has expended substantial resources developing and otherwise promoting the Goyard Marks. Goyard extensively uses and promotes the Goyard Marks in the United States in association with the sale of high quality goods. As a result of Goyard's efforts, as well as numerous fashion editorial and press coverage of Goyard featuring the Goyard Marks, members of the consuming public readily identify merchandise bearing or sold under the Goyard Marks as being high quality goods sponsored and approved by Goyard.  Goyard generates millions of dollars in annual revenue from sales of its products featuring the Goyard Marks.  Accordingly, the Goyard Marks have become source identifiers of high quality luxury goods originating from Goyard.

19.     Genuine goods bearing the Goyard Marks are legitimately promoted by Goyard and unrelated third parties via the Internet, including on www.goyard.com. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo! and Bing have become increasingly important to Goyard's overall marketing and consumer education efforts. Thus, Goyard expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Goyard and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Goyard brand and the goods sold thereunder.

**B.     Defendants' Infringing Conduct**

20.     The present lawsuit arises from Defendants' manufacture, production, marketing, distribution, advertisement, offering for sale, and/or sale of footwear products and accessories that bear marks that are identical with, substantially indistinguishable from, or confusingly similar to one or more of the Goyard Marks (the "Accused Products"), exemplars of which are shown below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**



***Examples of Accused Products***

21.     Upon information and belief, Defendants are engaged in the manufacture, distribution, promotion, marketing, offer for sale, and/or sale of footwear products, accessories, and apparel, including the Accused Products, through their website (www.thesurgeon.com) and social media, primarily, Instagram (@thesurgeon), both of which are accessible to consumers throughout the United States, including those within this judicial district.

22.     Upon information and belief, Defendants own and/or operate the above mentioned website and social media accounts.  Mr. Chambrone has dubbed himself "The Surgeon" as in "The Shoe Surgeon" that Defendants do business as, and thus is a conscious, active, moving force behind the infringement described herein.

23.     Defendants claim that the Accused Products are made with Goyard canvas material but such material is not obtained from Goyard, not provided to Defendants with

the knowledge or consent of Goyard, and are not verified as genuine by Goyard. The canvas material used by Defendants which contain the Goyard Marks are not intended or authorized for use by Defendants and are not intended or authorized for use as the featured element of footwear or lighters created by Defendants who have no relationship with Goyard.

24.   Goyard has not granted a license or given Defendants any form of permission to use intellectual property belonging to Goyard, including the Goyard Marks, in any way. Defendants used the Goyard Marks on the Accused Products without Goyard's permission.

25.   In promoting and marketing the Accused Products on the www.thesurgeon.com website, Defendants refer to the canvas material as "authentic" and has used the GOYARD mark to identify the Accused Products. Nowhere do Defendants identify that the Accused Products were created by Defendants without the authorization of Goyard. There is no dispute that Defendants are aware of the exclusive association between the Goyard Marks and Goyard, that goods bearing the Goyard Marks are highly desirable and sought after, and that Defendants' use of the Goyard Marks are intended to trade on the goodwill that Goyard has created in its mark through decades of use in the United States and substantial investments.

26.   Defendants' entire business is centered on combining popular athletic shoes originating from Nike, Birkenstock, or New Balance for example, and combining it with other famous products and trademarks such as from Louis Vuitton, Lanvin, and Gucci. Some of these collaborations are believed to be legitimate and Defendants have advertised them as such. However, Defendants have not received any consent or authorization from Goyard to place its canvas material, or a copy of the same, on its products. Goyard has never collaborated with Defendants. Notably, it is also questionable as to whether the actual footwear is legitimate as Defendants also host a "SRGN Academy" and "SRGN Studios" where Defendants teach members of the public how to construct a Nike Air Jordan, for example. Accordingly, the infringement

exhibited by Defendants as to Goyard may be taught to other members of the public, extending the reach of the infringement.

27.     Defendants' advertising efforts, such as Instagram posts, focus greatly on others well-recognized name brands, including Goyard, showing that Defendants are targeting consumers who are unquestionably familiar with and who are seeking to purchase goods bearing Goyard's iconic Goyardine canvas and Marks.   In fact, Defendants' Instagram has a whopping 1.1 million followers, further extending the promotion of Defendants' infringement.

28.     Upon information and belief, Defendants have also sold his products wholesale to other retailers, such as Harrod's in London and Urban Necessities www.urbannecessities.com, thereby further extending the infringement.

29.     In June 2022, Goyard sent Mr. Chambrone a cease and desist letter regarding his infringement of the Goyard Marks in connection with the Accused Products.  After receiving no response, Goyard sent follow up correspondence in July 2022.   Again, no response was received to the correspondence, but the Accused Products were removed from www.thesurgeon.com shortly thereafter.

30.     In approximately late Summer/Fall 2023, Goyard discovered that the Accused Products were placed back on the market with full force – Defendants generated several Instagram posts and TikTok videos regarding the Accused Products, and also offered the Accused Products for sale on Defendants' website, www.thesurgeon.com.  Rather than cease use of the Goyard Marks and the commercial benefit Defendants reap from their use of the same, Defendants have made zero changes to their recent product listings which contain no disclaimers regarding the lack of authorization or affiliation with Goyard, and blatantly ignored Goyard's intellectual property rights after being put on actual notice of Defendants' infringement. Defendants do nothing to prevent consumers from mistakenly believing that the Accused Products originate from, are authorized by, or are affiliated with Goyard.

31.     Defendants' infringement has continued into May 2024 and upon information and belief, is still continuing present day.

32.     The Accused Products that Defendants sold and shipped to various consumers within this District are very likely cause confusion for consumers, including Plaintiff's customers, who, at the time of initial interest, sale, and/or in the post-sale setting are led to believe that the Accused Products are genuine goods originating from, associated with, and/or approved by Goyard due to the marks being identical, substantially indistinguishable, or confusingly similar to the Goyard Marks.

33.     Further, Defendants' other legitimate collaborations with other famous brands suggest to consumers that Defendants may have a legitimate collaboration with Goyard, when they do not, and further lends to consumer confusion in the initial interest, sale, and/or post-sale setting.  Upon information and belief, Defendants purposefully omitted any disclaimers regarding the lack of affiliation with Goyard in order to trade on Goyard's reputation and goodwill.

34.     Regardless of whether Defendants use disclaimers or their own markings on the Accused Products, in the post-sale context, the marks most prominently displayed on the Accused Products are the Goyard Marks – identifying Goyard as the source of the Accused Products.  In the post-sale setting, there is nothing to alleviate the confusion consumers will experience when they see the Goyard Marks on a Nike shoe with The Shoe Surgeon's logos, incorrectly believing that Goyard has authorized the use of its Marks by Nike or Defendants, or that Goyard collaborated with Nike or Defendants.

35.     Defendants, through the sale and offer to sell counterfeit and infringing Goyard branded products, are directly, and unfairly, competing with Goyard's economic interests in the State of California and causing Goyard harm and damage within this jurisdiction.

36.     Like many other famous trademark owners, Goyard suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and

infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Goyard's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the Goyard name and Marks, and the destruction of the legitimate market sector in which it operates.

37.    In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Goyard expends significant monetary resources in connection with trademark enforcement efforts. Despite Goyard's attempts to resolve this matter amicably and without judicial intervention, Defendants have persisted in the unlawful conduct described herein.

38.    Upon information and belief, Defendants' use of the Goyard Marks is with full and active knowledge of Goyard's exclusive rights to the Marks, with knowledge of the iconic status of those Marks, and with knowledge that the Marks are associated exclusively with products of Goyard.  Indeed, Defendants were on actual notice of Goyard's rights in the Goyard Marks when it received the cease and desist letter from Goyard.

39.    As a matter of law, Defendants were also on constructive notice of Goyard's rights in the Goyard Marks based on Goyard's registrations that issued long before Defendants' use of imitation marks for their own products.

40.    Defendants' unauthorized use of the Goyard Marks is with a deliberate intent to ride on the fame and goodwill of Goyard's brand and Marks, the deliberate intent to profit from the Goyard Marks, and the deliberate intent to create a false impression as to the source or sponsorship of Defendants' goods or to otherwise compete unfairly with Goyard.  The goodwill that Goyard has built up in its brand and in the Goyard Marks through years of substantial investment and effort is put at risk by virtue of Defendants' wholesale appropriation of the Goyard Marks to sell and advertise their own competing products.

41.     Defendants' acts have and are likely to continue to irreparably harm Goyard's goodwill and reputation.  Defendants' use of the Goyard Marks unfairly and unlawfully wrests from Goyard control over its trademarks and reputation.  Goyard has no control over the quality of Defendants' products sold under or bearing the Goyard Marks.  As a result, Goyard's extremely valuable reputation is at risk.

42.     Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as to the origin, affiliation, or association of the Accused Products with Goyard, and the sponsorship or approval of the Accused Products by Goyard.

## **FIRST CAUSE OF ACTION**

### **(Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114)**

43.     Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

44.     This is an action for trademark infringement and/or counterfeiting against Defendants under 15 U.S.C. § 1114 based on their use of spurious and identical or substantially distinguishable (i.e., counterfeit), or confusingly similar (i.e., non-counterfeit), marks to the Goyard Marks in commerce, in connection with Defendants' promotion, distribution, manufacturing, offer for sale, sale, marketing, and/or advertising of the Accused Products.

45.     The Goyard Marks are nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality, with Goyard being the exclusive source of all such products.

46.     The specific U.S. registrations to the Goyard Marks identified herein are in full force and effect, and each one has been in continuous use since their respective first dates of use.  Indeed, the specific U.S. registrations identified in paragraph 13 are incontestable by virtue of their registrations and continuous use in commerce for more than five years.

47.    The Accused Products bear counterfeit marks that are identical or substantially indistinguishable to the Goyard Marks based on how the marks appear in the marketplace to a consumer.  Upon information and belief, the marks on the Accused Products are spurious.  Goyard has not authorized or consented to the use of the Goyard Marks.  Due to the identical or substantially indistinguishable appearance of the marks on the Accused Products compared to the Goyard Marks, consumers are likely to be confused, mistaken, or deceived, as to the origin of the marks on the Accused Products.

48.    The Accused Products bear marks that are confusingly similar to the Goyard Marks based on how the marks appear in the marketplace to a consumer such that it is likely to cause confusion, mistake, or deception as to the origin of the marks on the Accused Products.

49.    The identical or substantially indistinguishable or confusingly similar marks on the Accused Products are likely to lead to and result in consumers believing that Goyard produced, sponsored, authorized, licensed, or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Goyard.

50.    Defendants' promotion, marketing, advertising, offering for sale, selling, manufacturing, and/or distribution of the Accused Products and marks within is without Goyard's permission or authority and in total disregard of Goyard' rights to control its intellectual property.

51.    Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Goyard and reap the benefit of Goyard's goodwill associated with the Goyard Marks.

52.    As a direct and proximate result of Defendants' infringing conduct, Goyard has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined by this Court from advertising, selling, and offering for sale products bearing the Goyard Marks that are not in fact authentic Goyard® products.

53.    Goyard has no adequate remedy at law.

54.     In light of the foregoing, Goyard is entitled to injunctive relief prohibiting Defendants from using any of the Goyard Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Goyard has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SECOND CAUSE OF ACTION

### (False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a))

55.     Goyard incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

56.     Defendants' unauthorized use of marks identical or substantially indistinguishable or confusingly similar to the Goyard Marks on its merchandise, in interstate commerce and advertising relating to same, constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Goyard or come from the same source as Goyard's goods when they in fact do not.

57.     Defendants' use of the Goyard Marks is without Goyard's permission or authority and in total disregard of Goyard's rights to control its trademarks. Defendants' use of the Goyard Marks in connection with their own products destroys the value, exclusivity, and reputation of the Goyard Marks.

58.     Defendants' activities are likely to lead to and result in confusion, mistake, or deception, and are likely to cause the public to believe that Goyard has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Goyard.

59.     Goyard has no adequate remedy at law.

60.     In light of the foregoing, Goyard is entitled to injunctive relief prohibiting Defendants from using any of the Goyard Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Goyard has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## THIRD CAUSE OF ACTION

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.)

61.     Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

62.     The Goyard Marks are strong and distinctive marks that have been in use for decades in the United States and have achieved enormous and widespread public recognition.

63.     Through prominent, long, and continuous use in commerce, the Goyard Marks have become and continue to be famous and distinctive in the State of California.

64.     Defendants' misappropriation of the Goyard Marks was intended to capitalize on Goyard's goodwill for Defendant's own pecuniary gain.

65.     Defendants' unauthorized use of the Goyard Marks dilutes the distinctive quality of the Goyard Marks and decreases the capacity of such marks to identify and distinguish Goyard's products and has caused a likelihood of harm to Goyard's business reputation.

66.     By the acts described above, Defendants have caused and will continue to cause irreparable injury to Goyard's goodwill and business reputation, in violation of Cal. Bus. & Prof. Code § 17200 et seq.

67.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

68.     Defendants are liable to Goyard for all damages, whether direct or indirect, for the misappropriation of Goyard's trademarks, reputation and goodwill, which damages are subject to trebling.

69.     Upon information and belief, Defendants will continue their infringing acts unless restrained by this Court.

70.     Defendants' acts have damaged and will continue to damage Goyard, and Goyard has no adequate remedy at law.

71.     In light of the foregoing, Goyard is entitled to all available relief provided for in California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq. including permanent injunctive relief, restitution, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement and Unfair Competition)

72.     Goyard incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

73.     Goyard owns and enjoys common law trademark rights to the Goyard Marks in California and throughout the United States.

74.     Defendants' misappropriation of Goyard's common law trademarks was intended to capitalize on Goyard's goodwill for Defendants' own pecuniary gain. Goyard has expended substantial time, resources, and effort to obtain an excellent reputation for itself and its family of Marks. As a result of Goyard's efforts, Defendants are now unjustly enriched and are benefiting from property rights that rightfully belong to Goyard.

75.     Defendants' unauthorized use of the Goyard Marks has caused and is likely to cause confusion as to the source of Defendants' products due to the marks appearing identical, substantially indistinguishable, or confusingly similar to the Goyard Marks, all to the detriment of Goyard.

76.     Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Goyard.

77.     Defendants' acts constitute unfair competition under California common law.

78.     Goyard has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' infringing conduct unless it is enjoined by this Court.

79.     The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Goyard in reckless disregard of Goyard' rights. Said conduct was despicable and harmful to Goyard and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants and to deter them from similar such conduct in the future.

80.     In light of the foregoing, Goyard is entitled to injunctive relief prohibiting Defendants from using the Goyard Marks to recover all damages, including attorneys' fees, that Goyard has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Goyard respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

1.     Entry of an ORDER granting temporary, preliminary, and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

        a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products and/or any other products that bear the Goyard Marks, or any other marks identical, substantially indistinguishable, or confusingly similar thereto;

      b.  engaging in any other activity constituting unfair competition with Goyard, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Goyard;

      c.  committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Goyard;

2. Entry of an ORDER directing Defendants to recall from any distributors and retailers and to deliver to Goyard for destruction, or other disposition, all remaining inventory of the Accused Products, in addition to any other goods that infringe upon Goyard's rights to the Goyard Marks, including all advertisements, promotional and marketing materials therefore, as well as means of making same in their possession or under their control;

3. Entry of an ORDER directing Defendants to disclose their supplier(s) and manufacturer(s) of the Accused Products and provide all documents, correspondence, receipts, and invoices associated with the purchase of the Accused Products;

4. Entry of an ORDER directing Defendants to file with this Court and serve on Goyard within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

5. Entry of an ORDER for an accounting by Defendants of all gains, profits, and/or advantages derived from their infringing acts pursuant to 15 U.S.C. § 1117(a);

6. An award of all profits that Defendants have derived from using the Goyard Marks, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act; alternatively, an award of statutory damages pursuant to 15 U.S.C. § 1117 up to $2 million per trademark counterfeited and infringed, per type of good;

7.      An award of enhanced damages due to Defendants' willful infringement;

8.      An award of applicable interest amounts, costs, disbursements, and/or attorneys' fees, as an exceptional case under 15 U.S.C. § 1117 or otherwise;

9.      An award of fees and punitive damages to the full extent available in connection with Goyard's claims under California law; and

10.      Any such other relief that may be just and proper.


Dated:          June 6, 2024                    BLAKELY LAW GROUP

                                                By:     */s/ Tara A. Currie*
                                                        Brent H. Blakely
                                                        Tara A. Currie
                                                        ***Attorneys for Plaintiff***
                                                        ***Goyard St-Honore***

# **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Goyard St-Honore hereby demands a trial by jury as to all claims in this litigation.


Dated:      June 6, 2024         BLAKELY LAW GROUP


By:   */s/ Tara A. Currie*
Brent H. Blakely
Tara A. Currie
***Attorneys for Plaintiff***
***Goyard St-Honore***